Leonard THORNTON and William
Carothers, etc., et al.,
Plaintiffs-Appellants,

v.

James E. EVANS, et. al.,
Defendants-Appellees.

No. 81–1007.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1982.

Decided Nov. 1, 1982.

As Modified on Denial of Rehearing
Jan. 27, 1983.

Edmund W. Kitch, Charlottesville, Va., for plaintiffs-appellants.

Steven P. Handler, Hannafan & Handler, Gregory J. Shinglman, Frank & Shinglman, John W. Rotunno, Bell, Boyd & Lloyd, Chicago, Ill., for defendants-appellees.

Before CUDAHY, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and PECK,[*] Senior Circuit Judge.

CUDAHY, Circuit Judge.

Plaintiffs, who are members of the Teamsters Union and beneficiaries of the Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Fund"), brought suit to recover damages allegedly resulting from a conspiracy to defraud the Fund of millions of dollars through an insurance scam. Defendants involved in the present appeal include Richard G. Kleindienst, former Attorney General of the United States, the law firm of Welch, Morgan and Kleindienst, James E. Evans, Donald P. Klekamp, and American Financial Corporation. Evidence presented in this case and in other proceedings arising out of the same alleged fraud[1] traces a pattern which seems distressingly prevalent today: the savings of working men and women are pilfered, embezzled, parlayed, mismanaged and outright stolen by unscrupulous persons occupying positions of trust and confidence. Plaintiffs here have obtained a default judgment against the defendant (Joseph Hauser) who was the primary actor in the fraudulent scheme. We must decide on this appeal whether the remaining defendants, who plaintiffs claim were part of a conspiracy to facilitate the fraud, were properly either dismissed or accorded summary judgments by the district court. We conclude that summary judgment was improperly granted to two defendants and that the

---

[*] The Honorable John W. Peck, Senior Circuit Judge for the Sixth Circuit, is sitting by designation.

1. See, e.g., *Central States Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Co.*, 600 F.2d 671 (7th Cir. 1979); *Baker v. Old Security Life Insurance Co.*, No. 76 C 2904 (N.D.Ill.); *Trimble v. Kleindienst*, Nos. 77 C 1976, 77 C 2152 (D.D.C.); *Old Security Life Insurance Co. v. Continental Illinois National Bank and Trust Co.*, No. 76 C 3623 (N.D.Ill.).

case was improperly dismissed on the pleadings as to the other defendants.[2]

## I. FACTS

### A. Alleged Fraudulent Transactions

The facts in this case, as gleaned from plaintiffs' succession of complaints, the depositions and affidavits of the defendants, and other record evidence, reveal a complex web of dubious financial arrangements among individuals and corporations.[3] Plaintiffs allege, and Kleindienst admits in his affidavit filed in *Baker v. Old Security Life Insurance Co.*, No. 76 C 2904 (N.D.Ill.) (the "*Baker* affidavit"),[4] that in April, 1976,

2. Many issues have been raised on this appeal, including issues raised in pre- and post-argument motions in this court. We shall not discuss in detail every motion or issue now before us. Instead, we focus our discussion on those matters we view as most germane to our decision here. We have considered all motions not specifically addressed in this opinion and hereby deny them.

3. Pending before us are several motions regarding the contents of the appellate briefs which may be properly considered by this court. We grant defendant Kleindienst's motion to strike those portions of the plaintiffs' reply brief which contain, and refer to, an indictment filed in *Arizona v. Kleindienst*, No. 36 GJ 93 (Maricopa County, Ariz.1981). (Kleindienst was subsequently acquitted of the criminal charges in this indictment.) This indictment, which is not part of the record certified by the district court, contains only allegations of perjury committed by Kleindienst in testimony before the Arizona State Bar authorities, would not have been admissible in the district court and is not properly considered on review of the summary judgment motion before us. Moreover, this indictment was not filed with this court pursuant to proper motion to supplement the record on appeal under Fed.R.App.P. 10(c), and arguments relating to it are not properly included in a reply brief pursuant to Circuit Rule 9(e).

In a somewhat related matter, we also note that the plaintiffs have filed, and this court has conditionally accepted under Circuit Rule 11, subject to a later relevancy determination, a copy of the Arizona Supreme Court's opinion in *In re Kleindienst*, 132 Ariz. 95, 644 P.2d 249 (1982). (The Arizona Supreme Court suspended Kleindienst's license to practice law for one year in the above-cited case.) We shall not rely on the Arizona Supreme Court's opinion in ruling on the issues before us since that opinion was not before the district court when it considered the summary judgment motion, and the opinion is not relevant to determining whether plaintiffs have stated a claim against any of the defendants. In passing, however, we note that this opinion does discuss certain apparent attempts by Kleindienst to assist Hauser and his associates in keeping certain funds out of Arizona and, thus, out of the control of the Arizona Department of Insurance. Evidence related to these matters may be relevant in future proceedings contemplated by our opinion in this case.

On the other hand, we deny Kleindienst's motion to strike from plaintiffs' reply brief references to an "affidavit" (Kleindienst has labeled it a "narrative statement") filed by Kleindienst in the related case of *Baker v. Old Security Life Insurance Co.*, No. 76 C 2904 (N.D.Ill.). According to plaintiffs, this affidavit was filed with the district court as an exhibit to plaintiffs' motion for reconsideration of an order granting summary judgment to defendant Kleindienst. In addition, plaintiffs discussed this affidavit in the reply memorandum they filed with the district court on February 19, 1980. Kleindienst asserts that plaintiff could not have filed the affidavit with the motion for reconsideration since that affidavit was not apparently included in the record on appeal transmitted to this court. Kleindienst also points out that the copy of the affidavit filed by plaintiffs in this court contains Judge McMillen's stamp of receipt dated Nov. 27, 1979—a date which corresponds to its date of filing in the *Baker* case but not to the date of the reconsideration motion plaintiff filed in the instant case in January, 1980. But Judge McMillen's order filed on April 28, 1980, denying plaintiffs' reconsideration motion, although not specifically mentioning the affidavit/narrative statement, indicates that he was well aware of the evidence presented in *Baker* which relates to issues also presented in the instant case. Moreover, plaintiffs properly moved this court to supplement the record on appeal with the affidavit, and we are persuaded that the affidavit pertains to many of the issues we are considering here. Finally, there would have been no reason for the district court to refuse to accept the affidavit since discovery in the instant case was consolidated with discovery in the *Baker* case and the challenged document was filed in *Baker*. Thus, we accept plaintiffs' contention that the document was properly before the district court when it ruled on plaintiffs' reconsideration motion and is properly referred to in the reply brief.

4. The litigation in what is referred to in this opinion as the *Baker* case was commenced by the Fund's trustees to recover over $7 million paid by the Fund as insurance premiums, which were subsequently diverted and misappropriated from the insurer. Intervention by certain Fund beneficiaries representing the class of all beneficiaries was allowed in *Baker*

Kleindienst asked his friend, the late Frank E. Fitzsimmons, then president of the Teamsters Union, to intervene on behalf of Old Security Life Insurance Company ("Old Security") to encourage the Fund to favorably consider Old Security's bid to furnish insurance for members of the Fund. Kleindienst's overtures to Fitzsimmons were made at the request of an old acquaintance of Kleindienst, Thomas Webb, who had in turn been requested by defendant Joseph Hauser to seek avenues of influence in the union to secure the Fund's acceptance of Old Security's bid. Old Security subsequently received a contract award from the Fund to provide the insurance coverage, and Kleindienst and Webb received a $250,000 fee, which they split, for their role in securing the contract. In addition, Kleindienst was asked to represent a Hauser-controlled corporation in other matters.

Although the Fund began paying substantial insurance premiums to Old Security in May, 1976, the premiums were not retained or invested by Old Security. Rather, through an undisclosed co-insurance agreement with Family Provider Life Insurance Company ("Family Provider"), Old Security transferred 80% of the premiums to Family Provider and Family Provider assumed 80% of Old Security's risk.[5] The parent corporation of Family Provider, Great Pacific Corporation ("Great Pacific"), was controlled by Joseph Hauser and his associates, including John Boden and Brian Kavanaugh.[6]

On May 3, 1976, Great Pacific, acting through Hauser and its new counsel, Kleindienst, reached an agreement with defend-ant American Financial Corporation ("American") to acquire an American subsidiary (an insurance firm licensed in New Jersey) and Arizona real estate owned by another American subsidiary, Continental Homes, Inc. ("Continental Homes"). American was represented in this transaction by attorneys James Evans and Donald Klekamp, who are also defendants here. Great Pacific's check to American for $1 million as a partial down payment was returned to American on May 6 as dishonored for lack of sufficient funds.

The transaction did not fall through on this account, however, because, according to plaintiffs' complaint, Hauser and his associates illegally diverted premiums paid by the Fund to Old Security to cover the Great Pacific check. On May 10, the Fund paid premiums of $1.7 million to Old Security under the insurance agreement. On or about May 11, Hauser caused Old Security to transfer $1.5 million to Family Provider's Arizona bank accounts, presumably pursuant to the co-insurance agreement between those two corporations. At about the same time, Hauser caused Family Provider to declare a $1.8 million dividend to its parent, Great Pacific.[7] Great Pacific allegedly used these funds, most of which were originally deposited with Old Security as premiums, to complete the down payment to American with respect to the acquisition of the insurance company and the real estate, by placing approximately $1 million in an account at the Provident Bank in Cincinnati, Ohio.[8] The complaint does not allege that any of

by this court in *Central States Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Ins. Co.,* 600 F.2d 671 (7th Cir. 1979). Numerous defendants were named in *Baker,* including Kleindienst and Old Security Life Insurance Company. By a motion for clarification granted by the district court on October 6, 1980, plaintiffs in this action assert that the specific allegations of the conspiracy to facilitate a fraud upon the Fund presented here are not being pursued in the *Baker* case.

5. Apparently the Fund transferred over $3 million to Old Security sometime in early May, 1976. Kleindienst's fee was allegedly paid out of some of the funds illegally diverted from Old Security and Family Provider Corporation.

6. In unrelated proceedings, Hauser was indicted in April, 1976 for bribing union officials to do business with another insurance firm he controlled which provided health insurance to certain union health and welfare funds.

7. The dividend allegedly depleted Family Provider's assets to a level far below the level necessary to pay claims under the coinsurance agreement.

8. American owned and controlled the Provident Bank as one of its subsidiaries.

the defendants, other than Hauser, were aware at the time of these transactions that premiums paid to Old Security had been surreptitiously transferred to Great Pacific as a "dividend" from Family Provider, and then transferred to American. Further, the plaintiffs have cited to specific evidence linking the other defendants to Hauser's alleged diversion of premiums paid by the Fund to Old Security and his manipulation of Family Provider to declare a dividend to Great Pacific. The allegation connecting defendants, other than Hauser, to these actions is to the effect that, at a later time, the defendants, including Hauser, conspired together to conceal the diversion of these premiums.

Hauser's scheme began to unravel several days later when J.W. Trimble, Director of the Arizona Insurance Department, discovered the unlawful dividend paid by Family Provider to Great Pacific.[9] Trimble notified Family Provider that he would suspend its license to operate in Arizona unless the $1.8 million dividend was immediately returned to Family Provider. On May 19, Hauser and Boden met with Kleindienst in his Washington, D.C. office and informed him of Trimble's demand; Kleindienst states in his affidavit filed in support of his motion for summary judgment in this case that this was the first time he learned of the Family Provider dividend to Great Pacific. The apparent effect of Trimble's demand was to imperil the deal between Great Pacific and American (if the $1.8 million were to be returned). Further, Trimble's action affected the contract between the Fund and Old Security (since Family Provider's problems necessarily implicated the primary insurer).

The role of the defendants in the events of the next few days is crucial to determining whether these defendants "conspired" with others to defraud the Fund of millions of dollars of insurance premiums in breach of fiduciary duties. Kleindienst states in his affidavit filed in the instant case that

immediately after Hauser's revelation to him about the Family Provider dividend, he researched Arizona law, concluded that the dividend was illegal and advised Hauser and Boden to return, on behalf of Great Pacific, an unencumbered $1.8 million to Family Provider. Kleindienst further asserts that Hauser and Boden informed him later on May 19 that $1.8 million in unencumbered funds had been placed in Family Provider's bank accounts in the Provident Bank and in the Diplomat Bank in Washington, D.C. Kleindienst then informed Trimble in a telephone conversation (confirmed with a telegram sent by Kleindienst to Trimble on the same day) that Great Pacific had deposited $1.8 million in Family Provider's unencumbered bank accounts. Although not specifying in his affidavit the date or time, Kleindienst also claims that he "subsequently" requested both the Provident Bank and the Diplomat Bank to confirm to Trimble the deposits of unencumbered funds in the Family Provider accounts.

A meeting was held the next day, May 20, at Kleindienst's office allegedly attended by, among others, Hauser, Kavanaugh, Boden, Kleindienst, Evans and Klekamp. Plaintiffs claim that at this meeting, the defendants agreed to fraudulently represent to Trimble that the $1.1 million held in Family Provider's Provident Bank account was unencumbered even though that money was actually "controlled" by American. Defendants Evans and Klekamp explained in their depositions that the May 20 meeting resulted in an agreement that American's $1.1 million interest in the proceeds of the real estate transaction between its subsidiary, Continental Homes, and Great Pacific would be deposited in Family Provider's account at the Provident Bank. With this money, Family Provider was permitted to "invest" in the real estate transaction between Continental Homes and Great Pacific. During the meeting,

---

**9.** Apparently, under Arizona law the Department may require that an insurance company seeks prior approval from the Department before paying a dividend. Hauser neither notified the Department of the Family Provider dividend nor sought its permission to pay the dividend.

several letters were drafted by Evans, Klekamp and Kavanaugh for the purpose of effectuating the transfers of funds resulting from these decisions. One of these letters provided, in furtherance of the new investment by Family Provider in the Great Pacific—Continental Homes transaction, that the deposit in Family Provider's account at the Provident Bank was to be pledged to Continental Homes, the American subsidiary. *See* Ex. II (Plaintiffs' App. at 10). Evans and Klekamp explained that this unusual and questionable transaction [10] was in American's interest since this pledge kept the transaction between American and Great Pacific from collapsing. It is undeniable, however, that as a result of the transactions, the $1.1 million held in Family Provider's Provident Bank account was pledged as security to Continental Homes; thus, the $1.1 million was not unencumbered as Kleindienst represented to Trimble.

Although the meeting where these agreements were reached was held in Kleindienst's personal office, and the letters setting out the agreements and the security arrangements necessary to the agreements were drafted in his office and typed by his secretary, Kleindienst asserts in his affidavits that he was not aware that Kavanaugh,

Evans and Klekamp had prepared letters pledging the $1.1 million in Family Provider's Provident Bank account to American's subsidiary (Continental Homes).[11] Kleindienst asserts this lack of knowledge and awareness even though he was the attorney purportedly representing Great Pacific at the time.

Evans testified in his deposition that, on the day after the meeting in Kleindienst's office (May 21), Kleindienst informed him in a telephone conversation [12] that Trimble wanted confirmation that $1.1 million was held unencumbered in Family Provider's account at the Provident Bank and Kleindienst asked Evans to provide such confirmation by telegram. Evans asserts, albeit somewhat equivocally, that he "voic[ed] some objection to Mr. Kleindienst's suggested language and I believe the words in respect to unencumbered would not be acceptable as a result of the escrow pledge." Evans Dep. at 53–54; *see id.* at 50–55. Instead of using the term "unencumbered," Evans caused the Provident Bank to send the following telegram to Trimble:

On Thursday, May 20, 1976, there was deposited to the account of the Family Provider Life Insurance Company by

10. In the transaction, American and its subsidiary (Continental Homes) took $1.1 million it was to receive from Great Pacific, assigned it back to Great Pacific's subsidiary, Family Provider (to meet the objections of Trimble), and then reacquired an interest in the money when Family Provider used it to "invest" in the Great Pacific—Continental Homes transaction. The effect of these "phantom" transfers was to allow Great Pacific to use Family Provider's $1.1 million to complete the deal with American even though Family Provider and Kleindienst had earlier assured Trimble that this money would remain unencumbered.

11. Kleindienst's affidavit filed in the instant case does not state what, if anything, he knows or remembers of the meeting nor does it even specifically acknowledge that this meeting took place in his office; the affidavit merely denies generally any knowledge or involvement on his part in the matters involving the eventual pledge of funds by Family Provider to American/Continental Homes. The deposition testimony of Evans and Klekamp only tenuously supports Kleindienst's claim. Both Evans and Klekamp testified that they could not recall who, including Kleindienst, was actually

present *when these agreements were discussed* since several participants in the meeting came and went freely and thus may not have been present throughout. *See* Evans Dep. at 49–50; Klekamp Dep. at 74–77. But both Evans and Klekamp also testified at other points in their depositions, that the meeting was held in Kleindienst's office and that he attended the meeting. *See* Evans Dep. at 28–36; Klekamp Dep. at 56–57, 71–74, 92–93.

Moreover, Kleindienst's *Baker* affidavit neither acknowledges nor denies that a meeting occurred in his office with Hauser, Evans, Klekamp and others on either May 19 or May 20; he merely asserts, with reference to claims made by Boden, that he attended "no such meeting" at which the parties discussed efforts to misrepresent the status of Family Provider's bank accounts to Trimble. Kleindienst's *Baker* Affidavit at 10.

12. Evans was in Cincinnati (home of his law firm, American and the Provident Bank) at this time. Evans also testified in his deposition that this conversation may have occurred on May 22 instead of May 21.

Great Pacific Corporation the sum of $1.1 million into account # 0362–351. As of 2:30 p.m. on May 20, 1976 Phoenix, Arizona time, such balance was in the account and is currently maintained. If you have any further questions please call me at (513) 579–2000.[13]

Plaintiffs' App. at 11–12. Kleindienst's affidavits filed in support of summary judgment in this case and in the *Baker* case, although admitting that he asked the banks to confirm the status of Family Provider's accounts to Trimble, are silent with respect to this alleged conversation with Evans.[14]

Plaintiffs argue that the defendants facilitated Hauser's efforts to defraud the Fund by making a knowing misrepresentation (perhaps more precisely characterized as a deceptively incomplete representation) to Trimble. This alleged misrepresentation dissuaded Trimble from further investigation of Family Provider and related companies, through which the fraud on the Fund might have been uncovered sooner.

According to the allegations of the complaint, defendants' next step in furtherance of the conspiracy was taken on May 24 at a hearing held before Trimble in Arizona.[15] Plaintiffs allege that Kleindienst told Trimble that the $1.1 million held in Family Provider's Provident Bank account was unencumbered. In reliance on Kleindienst's representation, Trimble, according to plaintiffs, did not suspend Family Provider's license to conduct insurance business in Arizona. Kleindienst claims, on the other hand, that he represented Great Pacific and not Family Provider at this hearing, and that he advised Trimble only that Family Provider would not pay any more illegal dividends to Great Pacific. The transcript of the hearing reveals that Kleindienst, although not specifically claiming that the funds were unencumbered, at least argued to Trimble that Family Provider "has, as the evidence shows, the $1.8 million dollars." *In re Family Provider Life Insurance Co.,* No. 2129, Tr. at 46 (Ariz. Dept. of Ins. May 24, 1976).[16] This representation becomes more significant in light of Boden's false testimony at this hearing that the Family Provider account at the Provident Bank was not encumbered. *Id.* at 33–34.[17] Plaintiffs allege that, absent the represen-

13. In contrast, the telegram sent by the Diplomat Bank, which was contacted directly by Kleindienst, specified that Family Provider's funds held there were unencumbered.

14. In his affidavit in the instant litigation, Kleindienst does not discuss this conversation either to deny it or to explain it. Rather, he merely attempts in his appellate brief to cast doubt on Evans' testimony, claiming that Evans recalled voicing some form of objection to Kleindienst concerning the use of the term "unencumbered" only after Evans' recollection had been refreshed by reading to him a statement he had made in 1978 indicating that Kleindienst asked him to use the term "unencumbered" in the telegram sent to Trimble. Kleindienst's Br. at 20–21 n. 9.

15. The hearing was originally scheduled for June 1, but at the apparent urging of Kleindienst and others representing Great Pacific and Family Provider, the hearing was held on May 24. The apparent purpose of the hearing was to establish whether further action was needed in light of the illegal dividend paid by Family Provider to Great Pacific.

16. Kleindienst's full statement to Trimble was as follows:

Mr. Kleindienst: Just a footnote to what Mr. Madden says and with respect to one comment made by Mr. Low obviating this with respect to the future. I can assure the Commissioner that no dividend is going to be paid out by the Family Provider Life Insurance Co. without the consent of the Commissioner. Mr. Boden has testified that the company intends to file an application before the Commission after the 1st of July. It seems to me at that time when such a request is made, the Department can and should have a complete examination with respect to the calculations of reserves of this company. If no such dividend is going to be paid and the company has, as the evidence shows, the $1.8 million dollars, then there's no purpose or reason now to keep this hearing open, it would seem to me.

17. Boden had attended the meeting in Kleindienst's office on May 20 when the transfer and escrow agreements relating to Family Provider's Provident Bank account were made. After the fraud in this case began to unravel, Boden became an immunized witness who revealed in various proceedings that he, Hauser and others were, at that time, fraudulently diverting funds from various insurance companies under their control.

tations made by Boden and Kleindienst, the illegal diversion of funds from Family Provider would have been halted sooner.

The deal between American (and its subsidiaries) and Great Pacific (joined by its subsidiary, Family Provider) collapsed shortly after the hearing in Arizona when New Jersey authorities apparently refused to approve Great Pacific's acquisition of American's insurance company subsidiary. Kleindienst relates in his affidavit filed in the *Baker* case that he and one of his law partners then sought another insurance company for acquisition by Great Pacific. An appropriate candidate—National American Life Insurance Company ("NALICO") —was found, an agreement to purchase was drafted, and the sale was completed on June 15, 1976.[18] Kleindienst claims that shortly before this new transaction was consummated, he asked Hauser if any of the $2 million Hauser planned to use to purchase NALICO would come from the Family Provider accounts at the Provident and Diplomat Banks; according to Kleindienst, Hauser said "No." Sometime early in June, 1976, however, the $1.1 million in Family Provider's Provident Bank account had been withdrawn and, in fact, it was used by Hauser to fund in part the purchase of NALICO. Boden also claims, as reported by Kleindienst, that in a June 11 telephone conversation, Kleindienst told him that he (Boden) could transfer the money out of Family Provider's account and that the matter could be "fixed up" later. *See* Kleindienst's *Baker* Affidavit at 19, 21–23. Kleindienst denies Boden's claim and asserts that he (Kleindienst) had no knowledge of the source of the funds used by Hauser to purchase NALICO.

Kleindienst's relations with Hauser and Boden and their associates continued for only a short period after the NALICO transaction. On June 22, 1976, Kleindienst and Boden met with an administrator of the Fund in Chicago in an attempt to persuade the administrator to recommend to the Fund's trustees that they approve an assignment of Old Security's contract to NALICO.[19] The administrator refused to acquiesce in this assignment. About one week later, the Arizona attorney general, on behalf of Trimble, filed suit against Family Provider, Great Pacific, Boden and Kleindienst on account of the removal of money from Family Provider's accounts at the Provident Bank and the Diplomat Bank. Kleindienst immediately filed an affidavit in which he asserted that he was unaware that any money had been removed from Family Provider's accounts to fund the NALICO deal; the Arizona attorney general then agreed to stipulate to a dismissal of Kleindienst from the action. Thereafter, Kleindienst ceased to be the attorney for Great Pacific and had no further dealings with any of the defendants or other participants in these matters. Shortly after the Arizona attorney general's action was filed, the scheme of Hauser and his associates was uncovered and various government agencies began their investigations. The investigations did not begin, however, before the Fund had lost approximately $7 million in premiums paid to Old Security, which were diverted to other insurance companies controlled by Hauser and his associates.

### B. *Proceedings Below*

Plaintiffs filed their amended complaint (the "first amended complaint") on June 8, 1979. The first amended complaint was a class action brought on behalf of all Fund members and beneficiaries pursuant to Fed. R.Civ.P. 23(b)(2) and, in the alternative, plaintiffs sought leave to proceed derivatively on behalf of the Fund. Plaintiffs named Kleindienst; Welch, Morgan and Kleindienst (Kleindienst's former law firm); American; Evans and Klekamp as defend-

---

**18.** Hauser formed a new corporation, National Pacific Corporation, to acquire the NALICO stock.

**19.** Hauser and Boden apparently wanted to collapse the Family Provider corporation and transfer its business to NALICO (now owned by Hauser and Boden, among others, through National Pacific). By eliminating Family Provider, Hauser and Boden apparently sought to avoid further oversight of their insurance operations by Arizona authorities.

ants. The complaint states that these defendants were fiduciaries of the Fund under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1382 (1976 & Supp.), and alleges that the defendants conspired with Hauser and others to defraud the Fund by misrepresenting to Trimble the status of funds held by Family Provider in its account at the Provident Bank.

On July 13, 1979, Kleindienst moved the district court to quash service of process or, in the alternative, for summary judgment. In support of that motion, Kleindienst filed an affidavit in which he denied any participation in the fraud perpetrated by Hauser and his associates and asserted that he had no knowledge of any encumbrance upon Family Provider's bank accounts and thus did not knowingly make any false statements to Trimble.[20] Kleindienst also filed, in support of his motion, the depositions of Evans and Klekamp taken in connection with litigation commenced by Trimble in Washington, D.C.[21]

The district court granted Kleindienst's motion for summary judgment on December 5, 1979. The court reasoned that Kleindienst's affidavit, together with the other material he filed in support of the motion, "are sufficient to shift the burden of providing evidence to plaintiffs." Order of Dec. 5, 1979, at 4. Without any apparent discussion in its order about the material filed by Kleindienst, the court concluded that plaintiffs had not met their burden of producing evidence in response to Kleindienst's affidavit, notwithstanding that they had had sufficient time for discovery and had access to materials from related cases. The plaintiffs had rested on the allegations of the first amended complaint and on arguments pointing to the deficiencies in Kleindienst's affidavit. Since the district court found that summary judgment for Kleindienst was proper, the court *sua sponte* also dismissed the firm of Welch, Morgan and Kleindienst from the case since the liability of the firm arose from the claims against the firm's partner, Kleindienst.

On January 2, 1980, plaintiffs moved for reconsideration of the order granting summary judgment. In support of that motion, plaintiffs attached portions of a recent report issued by the Permanent Sub-Committee on Investigations of the Senate Committee on Governmental Affairs, which contained allegations by a committee investigator and by the Arizona attorney general that Kleindienst's representations to Trimble were not truthful and that Kleindienst's involvement with Old Security, Family Provider and Great Pacific began as an effort to buy Kleindienst's access to, and influence with, Fitzsimmons. Plaintiffs also filed with their motion a copy of a Kleindienst affidavit (labeled by Kleindienst a "narrative statement"), which had been recently filed in the related *Baker* action. This affidavit was much more detailed than the affidavit filed by Kleindienst in the instant case.[22]

The district court denied plaintiffs' reconsideration motion on April 28, 1980. Al-

---

**20.** This eight-page affidavit contains five pages of mostly conclusory statements (some of which were apparently intended to show lack of personal jurisdiction over him) reciting Kleindienst's non-participation in "any conspiracy, plan, joint venture, scheme or enterprise to provide services to or to defraud [the Fund] or its members of insurance premiums." Aff. of Kleindienst at 2 (July 5, 1979). The last three pages of the affidavit set out in somewhat more detail Kleindienst's version of the events beginning with the May 19 meeting with Boden and Hauser, when he first learned of the illegal dividend paid by Family Provider and concluding with the hearing before Trimble in Arizona on May 24. Kleindienst generally denies any knowledge during this period that Family Pro-

vider's account at the Provident Bank was encumbered.

**21.** The law firm of Welch, Morgan and Kleindienst filed an answer to the complaint.

**22.** In contrast to the conclusory affidavit he filed in this action, the *Baker* affidavit is twenty-five pages in length, excluding footnotes and attachments, and it details Kleindienst's involvement with Great Pacific beginning with the conversations with Fitzsimmons regarding Old Security's bid and concluding with Kleindienst's withdrawal as an attorney for Great Pacific after suit was filed in Arizona in June, 1976.

though apparently well aware of the substance of the *Baker* affidavit,[23] the district court did not discuss that affidavit but rather found that plaintiffs here had made "no perceptible progress with respect to defending against Kleindienst's motion ... since [Kleindienst's] motion was filed." Order of Apr. 28, 1980, at 3.

During the proceedings involving Kleindienst's motion for summary judgment, the district court also considered motions filed by American, Evans and Klekamp. On December 5, 1979, the court denied the motion of American to dismiss for lack of venue and for failure to state a claim; the court also denied the motions of Evans and Klekamp to dismiss for failure to state a claim and for lack of personal jurisdiction. These defendants then filed answers to the complaint.

On June 30, 1980, the district court again denied motions filed by American, Evans and Klekamp to dismiss a "corrected second amended complaint," dated February 19, for failure to state a claim on which relief can be granted.[24] The court found that the complaint (purportedly a class action or, in the alternative, a derivative action) stated a cause of action and that these defendants could be sued under ERISA if they conspired with Fund fiduciaries to defraud the Fund. The court also noted that demand on the Fund trustees was not a necessary prerequisite to bringing a derivative action, since the trustees had chosen not to sue American, Evans or Klekamp in the *Baker* case. But the court expressed doubt whether a derivative action could be maintained here in view of the common law principle that all beneficiaries are necessary parties in an action to restore the trust corpus. The court directed the plaintiffs to proceed immediately with a motion for class certification or else abandon the class action; in the alternative, the court stated that plaintiffs could file a new complaint asserting a derivative action which would satisfy the requirements of Fed.R.Civ.P. 23.1.

Plaintiffs filed another complaint, also styled a "second amended complaint," on July 14, 1980. The complaint was similar to previous versions of the "second amended complaint" except that it stated a cause of action on a derivative basis only, omitting any reference to a class action.[25] In a memorandum filed with the district court, plaintiffs' counsel asserted that the court's June 30 order improperly forced plaintiffs to elect proceeding with a class action or, alternatively, with a derivative action, without the benefit of a definitive ruling on whether a derivative action was available to them. Counsel requested that the court order "joinder" of the "plaintiff class" under Fed.R.Civ.P. 19(a) if it found that all beneficiaries were necessary parties to a derivative action. Defendants American, Evans and Klekamp filed a motion to dismiss this latest second amended complaint.

The district court granted the defendants' motion to dismiss on November 24, 1980. The court found that plaintiffs had either waived or abandoned their class action and thus only a derivative action was now before it. In its decision, the court reasoned that plaintiffs could not maintain a derivative action because plaintiffs had failed either to join all Fund beneficiaries as parties or to sue "as representatives of the class." Order of Nov. 24, 1980, at 3. Moreover, the court found that plaintiffs had not satisfied Fed.R.Civ.P. 23.1 because they "failed to demonstrate that the trustees are unwilling to sue [these defendants]

---

**23.** Only two months before ruling on plaintiffs' motion for reconsideration in the instant case, the court had denied Kleindienst's motion for summary judgment in the *Baker* case, the case in which the Kleindienst affidavit in question had been originally filed. The court explained the different treatment of Kleindienst's summary judgment motion in the instant case on the grounds that the plaintiffs in the *Baker* case were represented by different counsel, who had

exerted more effort in conducting discovery. *See* Order of Apr. 28, 1980, at 2–3.

**24.** In the interim between December 5, 1979, and June 30, 1980, the parties were involved in other procedural battles which are not germane to our consideration of the instant case.

**25.** This complaint also added, among others, Joseph Hauser as a defendant.

for the actions alleged in the [complaint]." *Id.*[26] Finally, the court concluded that plaintiffs had no "justiciable claim ... against these defendants under E.R.I.S.A." *Id.* at 4. Allegations that the actions of American, Evans and Klekamp were part of a conspiracy carried out in concert with Hauser and others were, according to the court, "too tenuous"; moreover, the court also concluded that these defendants were not fiduciaries covered by ERISA. The complaint thus assertedly failed to satisfy Fed.R.Civ.P. 12(b)(6), 8(e) and 9(b). *Id.* at 6.[27]

## II. *KLEINDIENST'S MOTION FOR SUMMARY JUDGMENT*[28]

In granting Kleindienst's motion for summary judgment and denying plaintiffs' motion for reconsideration, the district court found that the plaintiffs had not discharged their burden under Fed.R.Civ.P. 56(e) after Kleindienst filed his affidavit in support of summary judgment. Our review of the district court's decision is, of course, guided by the admonition that we view the record in the light most favorable to plaintiffs and that we consider the record as it existed before the district court. 10 Wright & Miller, *Federal Practice and Procedure* § 2716 (1973). If we find that there were genuine issues of material fact in the record before the district court, we must reverse. *See Ed Houser Enterprises, Inc. v. General Motors Corp.,* 595 F.2d 366, 368 (7th Cir.1978) (per curiam).

Fed.R.Civ.P. 56(e) provides in part:

... When a motion for summary judgment is made *and supported* as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affi-

davits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate,* shall be entered against him. [Emphasis supplied.]

Under subdivision (c) of Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

█ In this case, the district court had before it on December 5, 1979, the plaintiffs' "first amended complaint," Kleindienst's affidavit, and the depositions of Evans and Klekamp. The district court reasoned that summary judgment was appropriate since plaintiffs rested on their pleadings after Kleindienst filed his motion, supported by his affidavit and the depositions. In many instances, the district court would be fully justified in granting summary judgment to the moving party under such circumstances. *See, e.g., McPherson v. St. Paul Fire & Marine Insurance Co.,* 350 F.2d 563, 566 (5th Cir.1965). But the court may not automatically award summary judgment when the non-moving party stands on his pleadings. As Judge Pell noted for this court in *Kirk v. Home Indemnity Co.,* 431 F.2d 554, 560 (7th Cir.1970), the court need not grant summary judgment for apparent non-compliance with Rule 56(e) when the materials filed by the moving party "appear[] to include those which ordinarily [the non-moving party] would have filed." Moreover, Rule 56(e) itself admonishes that summary judgment should be entered when the non-moving

---

**26.** This conclusion appears to contradict the district court's order of June 30 when the court reasoned that demand on the trustees was not required since the trustees, in their own action, had not sued the defendants in question.

**27.** The court also opined that its "ruling might be different" if the trustees were parties to the action. Order of Nov. 24, 1980, at 6. The district court's order of November 24 became final as of December 3, 1980. On that latter

date, the court also entered a default judgment against defendant Hauser.

**28.** Our discussion here of the district court's disposition of Kleindienst's summary judgment motion also applies to defendants Welch, Morgan and Kleindienst; the law firm was granted summary judgment only because the court found summary judgment appropriate for its agent, Kleindienst.

party rests on his pleading only "if appropriate." The phrase "if appropriate" incorporates the general standard of subdivision (c) of Rule 56 which requires the absence of genuine issues of material fact. The drafters of Rule 56(e) made clear in their comments to the rule that "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, *summary judgment must be denied even if no opposing evidentiary matter is presented.*" Advisory Comm. Notes to Rule 56 (1963 amendments) (emphasis added), *reprinted in* 83 S.Ct. at 74. This interpretation is also consistent with the principle that the initial and ultimate burden of persuasion in a summary judgment motion rests with the moving party.

These principles lead us to conclude that summary judgment for Kleindienst was improper, even based upon the record as it existed on December 5, 1979. Plaintiffs allege that Kleindienst conspired with others to defraud the Fund. In furtherance of the conspiracy, plaintiffs claim that Kleindienst knowingly misrepresented the status of Family Provider's account in the Provident Bank. Kleindienst countered these allegations with an affidavit generally denying knowledge or participation in any fraudulent acts. At least some of the materials plaintiffs might have been expected to file to refute the Kleindienst affidavit—the deposition testimony of Evans and Klekamp—were filed by Kleindienst himself. Moreover, plaintiffs here were not passive and silent as to the asserted issues of fact; they did not look only to the court to ascertain the issues. Rather, plaintiffs specifically pointed out the alleged issues and relied on them to oppose Kleindienst's motion for summary judgment. *See* Plaintiffs' Memo in Opposition, at 12–13 (Oct. 9, 1979). Thus, under the reasoning of *Kirk,* and since Kleindienst appears to have filed some material which the plaintiffs would ordinarily have filed, the district court should not have granted summary judgment merely as a sanction for plaintiffs' failure to file evidentiary material in addition to the complaint.

We must then decide whether, on the basis of the record evidence, genuine issues of material fact exist which preclude the entry of summary judgment in favor of Kleindienst. As a preliminary matter, we are always hesitant to grant summary judgment when subjective matters—here Kleindienst's knowledge with respect to the Family Provider bank account—are material to the case. *See Conrad v. Delta Airlines, Inc.,* 494 F.2d 914, 918 (7th Cir. 1974); 10 Wright & Miller, *Federal Practice and Procedure* § 1730 (1973). On the other hand, we are mindful that a court should not shrink from granting summary judgment, if authorized and appropriate, to avoid needless trials. *Kirk v. Home Indemnity Co.,* 431 F.2d 554, 559–60 (7th Cir. 1970). But here the case for summary judgment seems to rest on a weak foundation, and justice demands a trial.

Although Kleindienst denies in conclusory terms any knowledge of the encumbrance on the funds in the Family Provider bank account, Kleindienst's claim is contradicted, at least at one point, by Evans' deposition testimony filed with the motion for summary judgment. Evans reluctantly testified that he recalled objecting to Kleindienst's suggestion that the Provident Bank tell Trimble that the Family Provider account was unencumbered. But Kleindienst has neither specifically admitted nor specifically denied that the claimed conversation with Evans took place in which he allegedly requested Evans—and Evans refused—to send a telegram to Trimble representing that Family Provider's Provident Bank account was unencumbered. Evans' recollection may be suspect, as Kleindienst now argues on appeal, but the testimony speaks for itself; its credibility or plausibility vis a vis Kleindienst's general claim is an issue to be resolved by the trier of fact. Kleindienst's failure to address in his affidavits the specifics of Evans' statement only serves to highlight what we believe are material issues of fact in the record.

Moreover, Kleindienst's affidavit does not even mention the meeting that was held in *his* office when, according to the deposition

testimony of Evans and Klekamp, the encumbrance on the Family Provider account was created; he merely asserts, in an oblique but obvious reference to this meeting, that he had no knowledge of the letters drafted by Evans and Klekamp. *See* note 11 *supra.* We are aware that plaintiffs have not cited any specific evidence (if there is any beyond Kleindienst's recollection) to indicate that Kleindienst was actually present when the encumbrance was created or that he was aware of the letters drafted at the meeting creating the encumbrance.[29] But, by the same token, Kleindienst's conclusory, broad-sweeping denial of knowledge of the letters creating the encumbrance does not resolve all factual issues in the face of a reasonable evidentiary inference that the participants in the meeting, especially the attorneys representing the corporate parties, were aware of what purportedly happened at the meeting. Kleindienst does not even clearly acknowledge (or specifically deny) that the meeting took place in his office, nor has he offered any explanation of his role at this asserted meeting which might dispel this inference. Given this state of the record, we are left in doubt about what occurred at the asserted meeting in Kleindienst's office on May 20. We are also left in doubt about Kleindienst's role in this meeting, and about whether Kleindienst was aware of the encumbrance placed upon Family Provider's bank account as a result of this meeting. We do not believe that, under these particular circumstances, Kleindienst is entitled to summary judgment when his affidavit fails to respond directly and specifically to these matters so as to eliminate issues of material fact.

If plaintiffs' allegations are true, they may demonstrate Kleindienst's complicity in a scheme to misrepresent facts to Trimble, which, according to plaintiffs, is apparently part of a larger scheme to defraud the Fund. It is not clear what additional specific facts could have been adduced by plaintiffs in opposition to summary judgment since the ultimate issue is one of Kleindienst's state of mind. Because Kleindienst's affidavit does not eliminate factual questions concerning his knowledge of crucial facts, we must reverse the grant of summary judgment.

Even if the evidence before the court as of December 5, 1979 might support summary judgment, we believe that the addition of Kleindienst's affidavit from *Baker,* which was presented to the district court by plaintiffs on motion for reconsideration, decidedly tips the balance against the entry of summary judgment below. The *Baker* affidavit sets out in detail Kleindienst's involvement with Family Provider and Great Pacific. The affidavit raises further questions about Kleindienst's alleged misrepresentations to Trimble, including Kleindienst's May 24 statement, and raises the additional issue whether he knew on June 11 that Family Provider would transfer money to another Hauser-controlled company to fund the purchase of NALICO, contrary to representations made to Trimble. Moreover, that affidavit also fails to specifically address the claim by Evans that he told Kleindienst on May 21 that Family Provider's Provident Bank account was encumbered. Kleindienst also apparently denies in this affidavit—contrary to the deposition testimony of Evans and Klekamp—that there was a meeting on or about May 20 in his office when the agreements were reached which created the encumbrance; at least Kleindienst denies participating in such a meeting. *See* Kleindienst's *Baker* Aff. at 10 (Nov. 17, 1979).[30] Finally, Klein-

---

**29.** We do not intend to suggest that plaintiffs' response to Kleindienst's summary judgment motion would generally be an appropriate litigation strategy. As we previously suggested, in many cases, summary judgment is proper when the nonmoving party does not respond with evidentiary material. But we are also well aware that the burden of proof here rests with Kleindienst to demonstrate that no material

issues of fact exist. In some situations, this burden is met only with specific averments rather than with general (and ambiguous) assertions.

**30.** Evans testified that the meeting where the encumbrance was created took place in Kleindienst's personal office, not a conference room. Evans also testified that Kleindienst's personal

dienst's efforts, as part of the alleged conspiracy, to hide from Trimble the true dealings between Family Provider and Great Pacific may be further evidenced by his receipt, upon request, of a legal opinion from an Arizona law firm on the question of how firms in the position of Family Provider and Great Pacific could "escape from regulation under the Arizona insurance laws ... and ... accomplish a 'withdrawal' with as little as possible participation by the Insurance Department." Office Memo from Shimmel, Hill, Bishop & Gruender to Richard G. Kleindienst, June 14, 1976, at 1 (attached to Kleindienst's Baker Affidavit). We believe that the district court abused its discretion in not granting plaintiffs' motion for reconsideration after being presented with very troubling evidence which does not remove from doubt Kleindienst's alleged participation in the scheme to defraud the Fund.[31]

### III. *DISMISSAL OF THE SECOND AMENDED COMPLAINT*

In its order dated November 24, 1980, the district court dismissed the plaintiffs' second amended complaint filed on July 14, 1980, as to defendants American, Evans and Klekamp. The court reasoned that these defendants were not fiduciaries under ERISA, that plaintiffs could not sue as representatives of the Fund under Fed.R.Civ.P. 23.1 and that the complaint both failed to state a claim under ERISA against the defendants and lacked sufficient particularity as required by Fed.R.Civ.P. 8(e) and 9(b). On appeal, Kleindienst and the firm of Welch, Morgan and Kleindienst have also argued in support of dismissal of the plaintiffs' second amended complaint as an alternative ground for affirming the judgments in their favor.[32] We discuss with respect to

each defendant the various grounds asserted in the district court in support of dismissing both the first and second amended complaint.

#### A. *Defendants as ERISA Fiduciaries*

The district court concluded that American, Evans and Klekamp "are not fiduciaries within the meaning of E.R.I.S.A. and therefore are not subject to suit in this court." Order of Nov. 24, 1980, at 7. The fiduciary duty standards imposed by ERISA, *see* 29 U.S.C. §§ 1104, 1105 (1976), are enforceable in civil damage actions only against parties who are *fiduciaries* under the ERISA statute. 29 U.S.C. § 1109(a) (1976). A person is a fiduciary for purposes of ERISA to the extent that he or she exercises discretion over the management of plan assets, renders investment advice for a fee or exercises discretionary control over the administration of a plan. 29 U.S.C. § 1002(21)(A) (1976).[33]

The facts recited in the plaintiffs' complaint do not support their general allegation that the defendants in this case are fiduciaries because they "exercised control over the funds of [the Fund] and converted them to their own use." Second Amended Complaint ¶ 35. Plaintiffs have not alleged any facts which would indicate that these defendants exercised any *discretionary* control over either the *investment* of Fund assets or the *administration* of the Fund. At best, the allegations of the complaint reveal a pattern of conspiratorial actions in support of actions by parties, such as Hauser and his associates, who may be fiduciaries as defined in ERISA. *Cf. Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 634–35 (W.D.Wis.1979) (trustees, administrators and officers of union pension plan

secretary typed the letter agreements creating the encumbrance. *See* Evans Dep. at 29–31.

**31.** Kleindienst's argument that summary judgment is also proper because he is not a fiduciary under ERISA is discussed in section III of this opinion *infra*.

**32.** Kleindienst and Welch, Morgan and Kleindienst were originally named as defendants in

the second amended complaint filed on July 14, 1980. By order of the district court, their names were stricken from the complaint because of the previous entry of orders granting them summary judgment.

**33.** *See* Little and Thrailkill, *Fiduciaries Under ERISA: A Narrow Path to Tread*, 30 *Vand.L. Rev.* 1, 4–10 (1977).

were ERISA-defined fiduciaries). *See also Brink v. DaLesio,* 496 F.Supp. 1350, 1374–75 (D.Md.1980), *aff'd in part, rev'd in part on other grounds,* 667 F.2d 420 (4th Cir. 1981).

But, even though plaintiffs have failed to state a claim against these defendants as fiduciaries within the meaning of ERISA, they may still have stated a claim under ERISA on the theory that the defendants conspired with parties who *are* fiduciaries to breach the duties imposed by ERISA. In *Fremont v. McGraw-Edison Co.,* 606 F.2d 752 (7th Cir. 1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980), the defendant-employer, who was sued by several former employees for an alleged wrongful withholding of pension benefits, counter-claimed against the employees by asserting that they had breached fiduciary duties under ERISA by concealing their involvement in a theft of the employer's property and trade secrets. This court held that the employer could assert a cause of action for breach of fiduciary duty only against the employee who was a trustee (and thus an ERISA fiduciary) of the pension plan. The court reasoned that it would not be proper to impose, without any statutory authority, a fiduciary duty on the non-trustee employee (thus depriving him of vested pension rights) because he failed to reveal his own involvement in the theft. But the limited scope of this holding, made in the context of a unique factual setting, was also suggested by the court when it reaffirmed the general principle we believe is applicable here:

> We are not saying that in an ordinary civil action against a trustee, others who have aided him, or conspired with him, in a breach of fiduciary duty may not be liable to the extent that they have profited from the breach. *See* Restatement, Second, Trusts § 256.

606 F.2d at 759; *accord Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 641–42 (W.D.Wis.1979). (In an ERISA action, "the Court is fully empowered to award the relief available in traditional trust law against nonfiduciaries who knowingly participate ... in a breach of trust.") (footnote omitted).

In its November 24 order, the district court noted this principle in passing but did not elaborate upon it or apply it to the facts alleged in plaintiffs' complaint. *See* Order of Nov. 24, 1980, at 6. In contrast, the court had previously held, when denying motions by American, Evans and Klekamp to dismiss plaintiffs' other complaints, that these defendants, even if not ERISA-defined fiduciaries, might still be accountable under ERISA for conspiring with parties who are fiduciaries to breach the duties imposed by ERISA. *See* Order of June 30, 1980, at 2 ("A non-fiduciary can be joined in such an action on the plaintiffs' theory that [American, Evans and Klekamp] conspired with the fiduciary . . . ."); Order of Dec. 5, 1979, at 3. The district court's sudden turnabout on this issue is unexplained in the record, is inconsistent with a reasonable interpretation of the allegations of the complaint and contravenes the principle recently affirmed by us in *Fremont.* Moreover, we do not believe that there are any mitigating factors similar to those found in *Fremont,* which counsel against imposing ERISA-based liability upon any of the defendants. Thus we reject the district court's conclusion that the plaintiffs' action must be dismissed because the defendants are not ERISA-defined fiduciaries.[34] Our holding in this regard is also applicable to Kleindienst and his former law firm since they too argue on appeal that Kleindienst lacked fiduciary status under ERISA.

**34.** In reviewing the district court's decision to dismiss the complaint, we interpret the allegations of plaintiffs' complaint as charging that the defendants in this appeal conspired with others who were fiduciaries to the Fund as defined in ERISA. In future proceedings, defendants will, of course, be able to challenge plaintiffs' allegations on the ground that the defendants' co-conspirators, such as Hauser and his associates, were not ERISA fiduciaries. A necessary element of plaintiffs' claims against the non-fiduciary defendants is that they conspired with fiduciaries (who need not be defendants in this action), and if this element is lacking, the court is without ERISA jurisdiction over these defendants.

## B. Plaintiffs' Status as Fund Representatives

The second alternative ground propounded by the district court for dismissing the second amended complaint filed on July 14, 1980, was that plaintiffs failed to satisfy the prerequisites of Fed.R.Civ.P. 23.1 for a derivative action. In reaching this conclusion, the district court first concluded that plaintiffs could not maintain an individual action against non-fiduciary parties but rather must sue either as representatives of the Fund in a derivative action or as representatives of the beneficiaries in a class action. The court then noted that plaintiffs had dropped or waived their class action claim since the second amended complaint stated that plaintiffs sued as representatives of the Fund. But after applying Rule 23.1 to the complaint, the court concluded that plaintiffs "failed to demonstrate that the trustees are unwilling to sue [American, Evans and Klekamp]," and that "[o]ther requirements of Rule 23.1 [were] likewise unsatisfied by the affidavit attached to the [complaint]." Order of Nov. 24, 1980, at 3–4.

ERISA is a comprehensive statute intended by Congress to federalize the law relating to employee insurance and benefit plans falling within its jurisdiction. *See Wadsworth v. Whaland*, 562 F.2d 70, 76–77

(1st Cir.1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); 29 U.S.C. § 1144(a) (1976). As with many like statutes, Congress obviously did not expressly address all the issues that might arise. Therefore, we ought, where unanticipated problems are presented, to develop substantive legal principles that accommodate the purposes of the statute. *See, e.g., Amato v. Bernard*, 618 F.2d 559 (9th Cir.1980); *Gilliam v. Edwards*, 492 F.Supp. 1255 (D.N.J. 1980); *Shaw v. Kruidenier*, 470 F.Supp. 1375 (S.D.Iowa 1979), *aff'd* 620 F.2d 307 (8th Cir. 1980). Our recognition in *Fremont* that a remedy lies under ERISA against non-fiduciaries who conspire with fiduciaries in breach of ERISA-imposed duties is a necessary development of the law of ERISA.

In the instant case, we must also determine the procedural requirements of a suit under ERISA against non-fiduciary parties for conspiracy with fiduciaries in schemes which violate statutory trust obligations. ERISA does not provide an explicit answer to these procedural questions,[35] and application of traditional trust law principles may, in some instances, conflict with Congress' desire to eliminate barriers to the protection and enforcement of rights in ERISA-covered benefit plans.[36] We

---

**35.** Although the statute provides for suits by *individual* beneficiaries to recover damages, the statutory provision granting the right of individual suit is directly related to other statutory provisions which we interpreted in *Fremont*, 606 F.2d at 758–59, as imposing fiduciary duties only upon *ERISA-defined fiduciaries*. *See* 29 U.S.C. §§ 1109(a), 1132(a) (1976). The provision granting to each individual beneficiary a right to sue can generate, and here in fact has generated, a multiplicity of suits. Such a provision does not confer standing on these plaintiffs to proceed with suits on their own behalf against these nonfiduciary defendants when these plaintiffs are suing for a breach of fiduciary duty committed not against them *as individual beneficiaries* but rather against the entire fund.

**36.** For example, traditional trust law principles dictate that in a suit against third parties (such as the defendants in the instant case), the beneficiaries must name the trustees as nominal defendants if the trustees wrongfully refuse to sue the third parties. *See* 4 A. Scott, *Law of*

*Trusts* § 282 (3d. ed. 1967). However, there is little practical value in adding the trustees as nominal defendants in an action under ERISA, where the suit is not against the trustees but rather is against nontrustees who breached, or conspired with others to breach, fiduciary duties. This is especially true where, as here, the trustees have instituted their own lawsuits in this matter. We thus strongly question the statement in the district court's November 24, 1980 order which hints that the beneficiaries here should have added the trustees as defendants.

Moreover, we see no place for the traditional trust law principle that all beneficiaries (in this case, they number in the hundreds of thousands) are "necessary parties" to a suit brought directly by the beneficiaries to challenge the waste and mismanagement of fund assets. There is no practical way to achieve joinder of all Fund beneficiaries in this case. And, the procedure we adopt here relying on Fed.R.Civ.P. 23 and 23.1 protects the interests of all beneficiaries when, as here, joinder is

agree with the district court that these plaintiffs, who seek to recover damages from non-fiduciary defendants for their role in a conspiracy directed against the Fund as a whole in breach of ERISA obligations, must sue either as representatives of the Fund in a derivative action or as representatives of the beneficiaries in a class action. The procedural safeguards of Fed.R.Civ.P. 23 and 23.1, coupled with the court's power to consolidate actions, can avoid multiple litigation while assuring beneficiaries of a forum to adjudicate claims of fraud, mismanagement and breach of fiduciary duties involving the Fund as a whole. Such claims touch the interest of every beneficiary.[37] We must therefore determine whether plaintiffs in this action have satisfied the prerequisites of Rule 23.1 to the maintenance of a derivative action.

■ The district court concluded that the plaintiffs failed to comply with Rule 23.1 because they did not make demand on the trustees to sue any of the defendants and did not offer an adequate reason for their failure to make demand. But the court's conclusion in this respect, at least as it relates to defendants American, Evans and Klekamp, stands in sharp—and unexplained—contrast to its decision of June 30, 1980. On that date, the court concluded, in denying motions to dismiss the plaintiffs' February 19 complaint, that "[s]ince the trustees have long since sued the persons whom they believe to be responsible for violation of certain fiduciary duties in *Baker* ... and have not joined [American, Ev-

ans and Klekamp] in that case, we find it unnecessary to require plaintiffs herein to make a formal demand upon the trustees to sue these defendants." Order of June 30, 1980, at 3.

We believe that the district court was right the first time. The purpose of requiring beneficiaries to demand action from the trustees before instituting suit is to notify the trustees of a potential claim, so they may investigate and take action, before a court intervenes at the beneficiaries' request. *Cf. Brody v. Chemical Bank*, 517 F.2d 932 (2d Cir. 1975); *Weiss v. Sunasco, Inc.*, 316 F.Supp. 1197 (E.D.Pa.1970). Here, the trustees were aware of the facts and of the involvement of the present defendants in the actions which gave rise to the trustees' own lawsuit. But the trustees chose not to name these defendants (apparently with the exception of Kleindienst) as parties. Therefore, it would be futile to make a demand on the trustees before filing suit. Plaintiffs' second amended complaint, filed on July 14, 1980, in fact asserts the failure of the trustees to sue these defendants in their own action as a ground for excusing failure to make a formal demand on the Fund's trustees. We believe this assertion is sufficient under both Rule 23.1 and ERISA to excuse formal demand upon the trustees as a prerequisite to plaintiffs' suit here.[38]

■ The district court also concluded that the plaintiffs' second amended complaint, filed on July 14, 1980, was not properly verified as required by Rule 23.1. But

impossible. *See* 3 A. Scott, *Law of Trusts* § 214 (3d ed. 1981 Supp.).

**37.** Indeed, application of Rules 23 and 23.1 achieves many of the same goals as the traditional rule which required joinder of all beneficiaries as necessary parties in an action brought against third parties.

**38.** It is our understanding that Kleindienst is (or was) a defendant in the *Baker* action, but for some reason not evident from the record, the district court did not consolidate the claims against Kleindienst into one suit. Plaintiffs, apparently aware of that fact, limited their statement in the July 14 second amended complaint explaining why demand was futile to a claim that the trustees had not sought to sue

these defendants "for the acts of negligence or fraud alleged herein." We leave it to the district court on remand to determine whether demand on the Fund's trustees is required as to the claims asserted here against Kleindienst. This is an appropriate disposition since we are unfamiliar with the specific claims against Kleindienst in the *Baker* case. If the claims against Kleindienst in *Baker* are clearly quite different from the claims sought to be brought here, demand on the trustees presumably would not be necessary as to Kleindienst in the instant case. The motion filed by plaintiffs to clarify trial issues and granted by the district court on October 6, 1980 may be helpful in answering this question.

the court did not explain or even suggest what it found to be the shortcomings of the verification statement attached to the complaint.[39] We believe that the complaint was properly verified. The purpose of the verification requirement is to prevent the use of the judicial process for strike suits and collusive actions and to insure that plaintiffs or their attorneys have investigated the charges and concluded that they possess merit. *See Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966); *Porte v. Home Federal Savings and Loan Association,* 409 F.Supp. 752 (N.D.Ill. 1976). The verification statement of plaintiffs' counsel which was filed with the July 14 second amended complaint fully satisfies these purposes. The statement recites that the complaint is based (1) on information obtained from public filings in other lawsuits, (2) published government reports and (3) information in the media concerning the activities of these defendants. In a case such as the one before us, where the acts constituting fraud and conspiracy are peculiarly within the defendants' knowledge, this form of verification is sufficient under Rule 23.1. *See In re National Student Marketing Litigation,* 413 F.Supp. 1156 (D.D.C. 1976).

### C. *Failure to State a Claim for Conspiracy to Defraud the Fund*

The final ground asserted by the district court for dismissing plaintiffs' second amended complaint filed on July 4, 1980 was that plaintiffs did not state claim against the defendants under ERISA. Although at one point characterizing the issue as one of lack of a "justiciable claim," Order of Nov. 24, 1980, at 4, the district court's concern appears to have been, first, that the complaint did not, with the conciseness and detail required by Fed.R.Civ.P. 8(e) and 9(b), tie the defendants to a conspiracy to defraud the Fund in breach of relevant fiduciary duties. Second, the complaint al-

legedly failed to state a claim cognizable under ERISA upon which relief could be granted. We believe the district court's characterization of the July 14 second amended complaint is unjustified and constitutes an abuse of discretion.

Throughout the course of the litigation, the district court apparently perceived the plaintiffs' claims as charging that the defendants participated in a conspiracy to defraud the Fund, thus stating a claim which could withstand dismissal under Fed.R. Civ.P. 12(b)(6). In denying the motions of American, Evans and Klekamp to dismiss the first amended complaint for failure to state a claim, the court summarized the complaint as follows:

> The gravamen of the amended complaint is that defendants participated in a conspiracy to defraud the [Fund] by assisting non-parties to evade regulatory directions and an investigation by the Arizona Director of Insurance. Plaintiffs allege that defendants' efforts prevented the suspension of "Family Provider's" license to conduct insurance business in Arizona and delayed the uncovering of the scheme to defraud the Fund ....
>
> The allegations of the amended complaint are sufficient to state a claim under E.R.I.S.A.

Order of Dec. 5, 1979, at 2–3. The district court reaffirmed this conclusion on June 30, 1980, when it again denied defendants' motion to dismiss the February 19, 1980 complaint for failure to state a claim under ERISA. Order of June 30, 1980, at 2.

But the district court radically changed course in its November 24, 1980 order. Although plaintiffs' July 14 second amended complaint contained the same factual claims as the previous complaints, the court found that this second amended complaint failed to tie American, Evans and Klekamp to the effort to defraud the Fund and thus failed to state a claim under ERISA. This finding

---

**39.** We may only speculate, but the district court may have objected to the statement of counsel in verifying the complaint that its contents were based in part on "newspaper articles and other information in the communica-

tion media." Although counsel would be well advised not to rely unduly on such sources of information for verifying complaints under Rule 23.1, we do not find that this reference impermissibly taints the statement as a whole.

was erroneous. Construing the allegations of the complaint, which we must take to be true for purposes of a motion under Fed.R. Civ.P. 12(b)(6), in the light most favorable to the plaintiffs, we must conclude that the complaint alleges that the defendants American, Evans and Klekamp facilitated the unlawful actions of Hauser and his associates. Indeed, the complaint alleges that Evans and Klekamp drafted the documents creating the encumbrance as part of a deceptive transfer of funds among American, Great Pacific and their subsidiaries. These actions allegedly facilitated the fraud on the Fund in breach of fiduciary duties under ERISA since these acts allowed Hauser to divert money paid by the Fund as premiums to Family Provider and to prevent the discovery of these transfers by Trimble. We believe that these allegations sufficiently tie the actions of American, Evans and Klekamp to the efforts by Hauser and others to defraud the Fund, in apparent breach of fiduciary duties under ERISA.

The relationship of Kleindienst to the fraud perpetrated upon the Fund is, as alleged in the complaint, even more direct. Thus the complaint alleges that Kleindienst took part in the negotiations that created the encumbrance upon Family Provider's Provident Bank account. Moreover, Kleindienst, acting as an attorney for the Hauser-controlled Great Pacific company, allegedly tried to hide this encumbrance from Trimble. These alleged actions also facilitated Hauser's fraud upon the Fund and prevented the fraud from being uncovered

at an earlier time, all in breach of fiduciary duties imposed by ERISA. The second amended complaint thus states a claim against Kleindienst (and against his principal, the law firm of Welch, Morgan and Kleindienst) under ERISA.[40]

The district court also held that the allegations of conspiracy among these defendants and others to facilitate the fraud upon the Fund were too "conclusory" and "tenuous" under Fed.R.Civ.P. 8(e) and 9(b). Rule 8(e)(1) provides that the allegations of a complaint "shall be simple, concise, and direct," and Rule 9(b) imposes the additional requirement that "circumstances constituting allegations of fraud" must "be stated with particularity." We believe that the second amended complaint filed on July 14, 1980 satisfies these requirements. Plaintiffs have set out in concise yet detailed pleadings the circumstances constituting the fraud upon the Fund perpetrated by Hauser and his associates as well as the conspiratorial actions taken by defendants to facilitate that fraud.[41] Although the elements of a common law fraud claim are typically pleaded in detail to comply with Rule 9(b), these elements are not required here since plaintiffs' cause of action is predicated upon ERISA, not the common law. Plaintiffs claim that the actions of these defendants, in combination with ERISA fiduciaries, amounted to a conspiracy to facilitate violations of ERISA by co-conspirators (who may or may not be parties to this action).[42] *The breach of fiduciary duties*

---

40. The district court and the defendants argue that the frauds perpetrated by these defendants were directed at third persons (*i.e.,* Trimble) and not at the Fund. But there is no requirement with respect to an ERISA claim that the *actions of these defendants had to be directed* against the Fund or that the Fund's trustees must have had to rely on any of the representations of these defendants. Moreover, plaintiffs are not making a claim of common law fraud, of which one element is reliance upon misrepresentations. The theory of plaintiffs' case is that these defendants *conspired* with others in breach of fiduciary duties to fraudulently divert insurance premiums paid by the Fund, and that their actions, although directed against third parties, *facilitated* the fraudulent activities of Hauser and his associates perpetrated against the Fund.

41. Of course, the requirement of conciseness under Rule 8(e) conflicts to an extent with Rule 9(b)'s requirement of detail. Commentators suggest that the detailed allegations required by Rule 9(b) must "be [made] consistently with the general philosophy of Rule 8(e)(1)." 5 Wright & Miller, *Federal Practice and Procedure* § 1281, at 364 (1969); *see id.* at § 1298.

42. The duty owed by these defendants (who are not ERISA-defined fiduciaries) is to refrain from conspiracy to facilitate actions by such fiduciaries constituting fraud on the Fund. *See Fremont v. McGraw-Edison Co.,* 606 F.2d 752, 759 (7th Cir. 1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980); *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 641–42 (W.D.Wis.1979).

*under ERISA,* which was allegedly caused by a fraudulent scheme to bilk the Fund, is the crux of the instant action. Allegations of fraud *per se* are only part of the plaintiffs' conspiracy claim. In alleging a conspiracy to facilitate the fraudulent diversion of the Fund's insurance premiums, plaintiffs have set forth in sufficient detail facts necessary to state a claim upon which relief may be granted.[43]

## IV.  *CONCLUSION*

The order granting summary judgment in favor of Kleindienst and Welch, Morgan & Kleindienst is reversed. The order dismissing the second amended complaint of July 14, 1980, as to defendants American, Evans and Klekamp, and the order striking the names of Kleindienst and Welch, Morgan and Kleindienst from the second amended complaint are reversed.[44] The case is remanded to the district court for further proceedings not inconsistent with this opinion.[45]

**43.** Thus, we do not hold that Rule 9(b) is inapplicable to this case because even claims of a breach of fiduciary duties are subject to Rule 9(b). *See Robinson v. Caster,* 356 F.2d 924, 925 (7th Cir.1966). We also note that the instant case, with its detailed pleadings presenting the circumstances underlying the alleged fraudulent actions and breach of fiduciary duties, is distinguishable from *Robinson* where the court upheld the dismissal under Rule 9(b) of a complaint containing only "bare assertions of a conspiracy to defraud."

**44.** We uphold, however, the district court's decision that plaintiffs cannot state a claim against these defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 (1976). *See* Order of Nov. 24, 1980, at 3. Those portions of plaintiffs' second amended complaint filed on July 14 containing the RICO count were properly stricken.

We do not rule on the substance of the appellants' pendent claims based on state law fraud. These claims are not stated with adequate specificity, nor are there sufficient facts developed in the record for us to consider appellants' arguments intelligently. Moreover, it is not clear which state's law should be applied; and this issue was not briefed to us. Thus, it presumably remains open to the appellants, subject to the proper exercise of discretion by the district court, to develop these claims upon remand, although we would caution that they may be preempted by ERISA, 29 U.S.C. § 1144(a). *See Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981).

**45.** The district court should also investigate the possibility of consolidating the instant case with others currently pending before the court which also arise out of Hauser's efforts to defraud the Fund. Consolidation should be undertaken if it is practical to do so in order to avoid any prejudice to any defendants named in this case who are also defendants in other related actions.