Robert ARAKELIAN, et al., Plaintiffs,

v.

NATIONAL WESTERN LIFE INSURANCE CO., et al., Defendants.

Civ. A. No. 84–1953 SSH.

United States District Court, District of Columbia.

Oct. 12, 1990.

See also 755 F.Supp. 1080.

Daniel Kozma, Laurence E. Gold, Washington, D.C., for plaintiffs.

Richard Guy Vernon, Washington, D.C., for National Western Life Ins. Co.

James Ray Eyler, George Beall, Baltimore, Md., Steven J. Sacher, Washington, D.C., Will D. Davis, Austin, Tex., James Ray Eyler, Baltimore, Md., Richard Guy Vernon, Washington, D.C., for defendants.

John T. Coyne, David Patrick Durbin, Washington, D.C., for trustees Boswell, Howard & Andrews and Builders, Contractors.

Jeffrey J. Hines, Alvin I. Frederick, Baltimore, Md., for Benefits, Inc.

Gerald I. Katz, Mark J. Stone, Teresa Ann Keough, Vienna, Va., for United Masonry.

Tarrant H. Lomax, Washington, D.C., for Halco Engin. & Welcon, Inc.

## MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

This matter is before the Court on the motion of defendant Benefits, Inc. (Benefits), for summary judgment. Upon consideration of the motion, plaintiffs' opposition, Benefits' reply, and the entire record herein, the Court grants the motion in part and denies it in part.

### Background

Plaintiffs filed this action claiming that National Western Life Insurance Company (National Western) and its three trustees violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, in structuring, marketing, investing, and administering the National

**1088**

Western Life Insurance Company's Builders, Contractors, and Employees Retirement Trust and Pension Plan (Plan). Plaintiffs specifically claim in Count 8 of their complaint that Benefits, Inc., aided and abetted National Western and its trustees in their ERISA breaches.[1] Plaintiffs claim that Benefits aided and abetted National Western by "marketing ... or assisting ... in marketing the Plan ... [and] [b]y receiving ... compensation for its services." (Complaint ¶ 41.)

Benefits, Inc., was established in 1982 by Jacob Weiss to sell pension plans and other insurance matters. Benefits derived a substantial amount of its commissions from sales of National Western's Plan. *See* Plaintiffs' Opposition at 7 (stating that Benefits received approximately 80% of its commissions from National Western between 1982 and 1987). *See also* deposition of Weiss at 42 (stating that in 1983 90% of Benefits' commissions came from the sale of National Western products). Weiss, who previously worked at Carroon & Black, another benefits firm, was recruited by Larry West, a National Western Vice-President and sales director, to sell National Western's Plan. West trained Weiss, gave him promotional materials, met regularly with him, and supervised him. On occasion, Weiss was consulted about changes that were made in the Plan, but he was given no real input into those changes. For the most part, Benefits was informed of changes after they had already been made. The only decisions directly affecting the Plan which involved Benefits were the amounts employers could contribute under applicable Internal Revenue Service (IRS) and Department of Labor (DoL) rulings. It appears that Weiss met with an official from the DoL regarding the correct amount of contributions in 1983. It also appears that he corresponded with both the

IRS and the DoL on this matter. The extent of his influence and the extent of his knowledge is unknown, and subject to dispute.

### Discussion

■ Federal Rule of Civil Procedure 56(c) allows the Court to grant summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Bias v. Advantage International, Inc.,* 905 F.2d 1558 (D.C.Cir.1990). A party that bears the burden of proof at trial must make a sufficient showing to establish the existence of a genuine issue of material fact essential to that party's case. *Id. See also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Plaintiffs argue that they have shown sufficient evidence to demonstrate a genuine issue of material fact as to their claim that Benefits knowingly aided and abetted National Western's fiduciary breach. As evidence of such knowing aiding and abetting, plaintiffs point to Benefits' marketing the Plan with knowledge of the following facts: (1) all Plan assets were invested solely in National Western annuities; (2) National Western amended the Plan in October 1983 to impose surrender charges; (3) National Western set the Plan's interest rates to maximize its own profits, thereby possibly violating ERISA's exclusive benefits rules; and (4) the Plan and its marketing materials encouraged employers to pay in excess of the 25% limit of hourly wages. Plaintiffs allege that Benefits knew of these improprieties and marketed the Plan and encouraged employers to join the Plan in spite of them.

Benefits claims that it did not know of these improprieties, nor did it aid or abet

---

**1.** The Court already has determined that National Western breached its fiduciary duties by failing to analyze the merits of investing all Plan assets in its own annuity contracts, by engaging in prohibited transactions, and by amending the Plan in October 1983 to impose surrender charges. For a more detailed description of the background of this case and the Court's holdings, *see Arakelian v. National Western Life Insurance Co.,* 724 F.Supp. 1033 (D.D.C.1989); *Arakelian v. National Western Life Insurance Co.,* 126 F.R.D. 1 (D.D.C.1989); and *Arakelian v. National Western Life Insurance Co.,* 680 F.Supp. 400 (D.D.C.1987).

National Western in any of its fiduciary breaches.

■ Plaintiffs admit that Benefits is not a fiduciary to the Plan. However, non-fiduciaries have been found liable for ERISA violations if it is established that they knowingly participated in a breach of trust. *See Fink v. National Savings & Trust Co.*, 772 F.2d 951 (D.C.Cir.1985).[2]

■ The Court finds after careful review of the evidence presented that no issues of material fact have been shown to substantiate plaintiffs' claim that Benefits' marketing of the Plan aided and abetted National Western in its investing all of the Plan assets without investigation into National Western annuities. Nor are there genuine issues of material fact which would justify denying Benefits' motion for summary judgment as to the surrender charges and excess interest rate claims. The Court notes that selling the Plan after a surrender charge has been imposed would not decrease any future participant's accrued benefits. The change in the surrender charge only affects the accrued benefits of existing participants. Furthermore, although Benefits would know of the present excess interest rates, the rates affecting new participants are, again, out of Benefits' hands and beyond its influence.

Plaintiffs have failed to show that there is more than "some metaphysical doubt" as to the facts or to come forward with "specific facts showing that there is a genuine issue for trial" on these claims. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). Accordingly, summary judgment is granted as to these breaches.

■ A genuine issue of material fact does exist, however, as to the culpability of Benefits for the setting and use of the excess contribution rates. It is clear that Benefits did have some contact through Weiss with the DoL and the IRS about these issues, did market the Plan using examples which were in excess of the limit, and did discuss this issue with National Western through West. Therefore, the Court denies Benefits' motion as to the excess contribution rate.

Accordingly, it hereby is

ORDERED, that Benefits' motion for summary judgment is granted on the issues of liability for aiding and abetting National Western by marketing the Plan while all Plan assets were invested solely in National Western annuities; marketing the Plan after the October 1983 surrender charges were imposed; and for marketing the Plan when it allegedly imposed excess interest rates in violation of ERISA's exclusive benefit rules. It hereby further is

ORDERED, that Benefits' motion for summary judgment is denied as to the claim that it aided and abetted National Western by encouraging excess contributions.

SO ORDERED.

---

**2.** *See also Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir.1988); *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1220–21 (2d Cir.1987); *Thornton v. Evans*, 692 F.2d 1064 (7th Cir.1982); *Pension Fund–Mid Jersey Trucking Industry–Local 701 v. Omni Funding Group*, 731 F.Supp. 161 (D.N.J.1990); *Folts v. U.S. News & World Report, Inc.*, 627 F.Supp. 1143, 1168 (D.D.C.1986); *Donovan v. UMIC, Inc.*, 580 F.Supp. 1455 (S.D.N.Y.1984); *Donovan v.*

*Bryans*, 566 F.Supp. 1258 (E.D.Pa.1983). Some courts have also required a showing that the non-fiduciary derived direct financial benefit from the harm. *See, e.g., Thornton v. Evans*, 692 F.2d 1064; *Fremont McGraw–Edison Co.*, 606 F.2d 752, 759 (7th Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980); *Donovan v. Daugherty*, 550 F.Supp. at 410, 411.