**In re Jorge del VALLE OTERO, Diana Ferrer Marrero, Debtors.**

**COMMISSIONER OF INSURANCE OF PUERTO RICO as Liquidator of Corporacion Insular de Seguros, Plaintiff,**

**v.**

**Jorge del VALLE OTERO, Diana Ferrer Marrero, Carlos Rodriguez Quesada, Trustee, Defendants.**

**Bankruptcy No. B–93–00794 (ESL). Adv. No. 93–0060.**

United States Bankruptcy Court, D. Puerto Rico.

Sept. 19, 1994.

---

Nelson Robles Diaz, Santurce, PR, for plaintiff.

Francisco Ramos González Law Offices Ramos Urrutia, Hato Rey, PR, for defendant Jorge del Valle Otero.

### OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

Before the Court is a Motion for Summary Judgment (docket No. 9, filed on November 29, 1993) submitted by defendants Jorge del Valle and Diana Ferrer Marrero alleging that the fiduciary relationship between themselves and plaintiff and/or their assignees has been waived, thereby, prohibiting plaintiff from asserting nondischargeability of the debt pursuant to 11 U.S.C. § 523(a)(4). An opposition (docket No. 16, filed on February 8, 1994) was filed by plaintiff Commissioner of Insurance of Puerto Rico. In addition, plaintiff submitted a Motion for Partial Summary Judgment (docket No. 11, filed on December 17, 1993)[1] alleging that the debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(4) alleging that debtors committed defalcation while acting in a fiduciary capacity.[2]

## I.  BACKGROUND

The facts pertinent to resolution of these matters are undisputed. Debtor Jorge del Valle Otero is the president and owner of Seguros del Valle and he and debtor Diana M. Ferrer Marrero are authorized agents of Seguros del Valle, Inc. (del Valle). Del Valle was authorized to do business in March, 1989 and became a general insurance agency of Corporación Insular de Seguros (Insular) from August 28, 1989 through August, 1992. On February 19, 1993, debtors jointly filed under Chapter 11 of the Bankruptcy Code wherein they identified an unsecured debt

---

1. *See also* Statement of Undisputed Material Facts and Memorandum of Law in Support of Motion for Partial Summary Judgment, docket Nos. 12 & 13 respectively, filed on December 17, 1993 and Plaintiff's Motion to Reiterate Motion for Partial Summary Judgment, docket No. 17, filed on august 11, 1994.

2. Defendants did not submit a separate opposition to this motion.

totalling one hundred thousand dollars ($100,000.00) in insurance premiums owed to Insular.[3]

On November 7, 1991 and again on March 21, 1992, debtors entered into a second and third contract (collectively, new contracts) with Insular, both carry the title "Contrato en Reconocimiento de Deuda y de Cesión de Comisiones" (Acknowledgement of Debt and Cessation of Commission). The new contracts altered the arrangement between Insular and del Valle whereby a second agent assumed del Valle's collection and remittance of premiums in exchange for five percent of its commission and, further, retained and submitted fifty percent of del Valle's commission for the debt owed by del Valle to Insular. The only difference between these two contracts is the identity of the second agent.[4]

Insular became insolvent on December 21, 1992 and pursuant to the Laws of Puerto Rico, Chapter 40 of the Insurance Code, the Commissioner of Insurance in Puerto Rico, the liquidator of Insular, is the successor to the insolvent insurer's rights and may pursue all claims arising therefrom. In that capacity, plaintiff asserts that the debt owed by defendants from the collection insurance premiums is not dischargeable under § 523(a)(4) for failure to submit insurance premiums to Insular. This action is pursued under 26 L.P.R.A. § 938, whereby agents who collect insurance premiums are fiduciaries and the funds collected thereby constitute a trust.

Debtors, on the other hand, allege that any benefits plaintiff derived from the fiduciary obligations statutorily imposed upon insurance agents were waived by the parties' subsequent acts of executing new contracts containing terms that alter the relationship as defined by the General Agency Agreement.

## II. SUMMARY JUDGMENT STANDARD

Bankruptcy Rule 7056 makes Rule 56 of the Fed.R.Civ.P. applicable to adversary proceedings. Accordingly, summary judgment is warranted where, after adequate time for discovery and upon motion, a party establishes the elements essential to its case and upon which it carries the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In addition, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). When considering a petition for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988).

■ The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). *See also López v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1516 (1st Cir.1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden at trial. *Bias v. Advantage International, Inc.*, 905 F.2d 1558, 1560–61 (D.C.Cir.), *cert. denied*, 498 U.S. 958, 111 S.Ct. 387, 112 L.Ed.2d 397 (1990). Therefore, the moving party cannot prevail if any essential element of its claim or defense requires trial. *López*, 938 F.2d at 1516. The moving party is also required to

---

**3.** This represents an estimate; the exact amount of the claim is subject of a future audit.

**4.** The November 7, 1991 contract identified the second agent as Intercontinental Insurance Agency, Inc. which was subsequently replaced by Insuramerica Agency, Inc. in the March 21, 1992 contract.

demonstrate that there is an absence of evidence supporting the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. *See also Prokey v. Watkins,* 942 F.2d 67, 72 (1st Cir.1991); *Daury,* 842 F.2d at 11.

Once the moving party has met its burden, the burden switches to the nonmoving party who must show that a genuine issue of material fact exists requiring deference to the fact finder. The nonmoving party may not merely demonstrate the existence of some factual dispute to defeat a motion for summary judgment. *Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 804 (1st Cir.1987). *See also Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1172 (1st Cir.1988); *Hahn,* 523 F.2d at 464. To meet its burden, the nonmoving party is required to present evidentiary support for every essential element of its case and upon which it bears the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1531 (3rd Cir.1990). The failure of the nonmoving party to present proof for each element of its case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. In other words, there is no issue for trial unless there is sufficient evidence presented by the nonmoving party which could support a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

The respondent may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could reasonably support a verdict for the nonmoving party. *Over the Road Drivers, Inc. v. Transport Insurance Co.,* 637 F.2d 816, 818 (1st Cir.1980). Although it is not the function of the trial judge to weigh the evidence or determine its credibility, where the evidence submitted by the nonmoving party in response to a motion for summary judgment is merely colorable or not sufficiently probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## III. DISCUSSION

The Supreme Court has articulated the central purpose of the Bankruptcy Code as providing a "fresh start" for honest but unfortunate and insolvent debtors. Accordingly, the Code provides a procedure whereby debtors can reorder their financial affairs, resolve matters with their creditors and be given "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

In addition, Congress has fashioned various exceptions to the discharge of particular debts where the creditors' interest in being paid outweighs debtor's interest in a fresh start. These exceptions are not only designed to penalize debtors for culpable acts but also to protect inculpable creditors. *In re Menna,* 16 F.3d 7, 10 (1st Cir.1994).

Exceptions to discharge are contained in 11 U.S.C. § 523(a). The provision pertinent to this action reads as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt— ...

(4) for fraud of defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...

Consistent with the purpose of the Code, the exceptions to discharge of a debt set forth in § 523(a) are strictly construed against the creditor and in favor of the debtor. *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Ward,* 88 B.R. 727, 728 (Bankr.W.D.Pa. 1988).

The party opposing discharge, has the burden of persuasion. *In re Burgess,* 955 F.2d 134, 136 (1st Cir.1992). In this case, the creditor must prove, by a preponderance of the evidence, that its claim is not dischargeable under the provisions of the Code. *Grogan v. Garner,* 498 U.S. 279, 283–85, 111 S.Ct. 654, 657–58, 112 L.Ed.2d 755 (1991) (rejecting the notion that the heightened clear and convincing standard of proof

as required to effectuate the "fresh start" policy of the Bankruptcy Code).

■ Plaintiff bases its assertion that the debt is not dischargeable on the fact that debtors did not pay Insular the insurance premiums collected from its clients, thereby, committing defalcation. In order that a debt be excepted from discharge for defalcation under this provision, the plaintiff must first establish that a fiduciary relationship existed between the debtor and creditor when the acts occurred.

■ Courts have applied a mixture of federal law and state law to determine whether a debt should be denied discharge pursuant to this subsection. Federal law determines whether a fiduciary status exists while state law is utilized to determine the trust relationship. *In re Black,* 787 F.2d 503, 506 (10th Cir.1986); *Matter of Angelle,* 610 F.2d 1335, 1341 (5th Cir.1980).

■ In the classic sense, a fiduciary is one "who undertakes to act disinterestedly in his beneficiary's best interest." *In re Brown,* 131 B.R. 900, 904 (Bankr.D.Me.1991). For purposes of the Bankruptcy Code, this definition has been narrowly construed by the Supreme Court to only include those trustee relationships which arise from technical trusts rather than trusts which arise from contract. Accordingly, in *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 208, 11 L.Ed. 236 (1844), the Court held:

> In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the [Bankruptcy Act] ... The act speaks of technical trusts, and not those which the law implies from the contract. A factor [agent] is not, therefore, within the act.

Since then, however, courts have been left to struggle with what is meant by technical trust resulting, oftentimes, with contradicto-

ry or opposing positions. *See In re Turner,* 134 B.R. 646 (Bkrtcy.N.D.Okl.1991) for a comprehensive historical review. Generally, courts have held that technical trusts may be established by statute or inferred from conduct. 3 *Norton Bankruptcy Law and Practice 2d* § 47.19 (1994).[5]

■ In its second opinion addressing this issue, the Supreme Court indicated that, in addition, the Bankruptcy Code requires that in order for a claim to be nondischargeable under this provision, it must have arisen from a trust voluntarily created. Involuntary trusts, whereby trustee obligations arise from operation of law in reference to or as a consequence of some wrongful act, i.e., constructive trusts, do not satisfy the requirements of the Code. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934); *Quaif v. Johnson,* 4 F.3d 950, 953 (11th Cir.1993); *In re Long,* 774 F.2d 875, 878 (8th Cir.1985); *In re Patton,* 129 B.R. 113, 118 (Bankr.W.D.Tex. 1991); 3 *Collier on Bankruptcy* ¶ 523.14(c) (15th ed. 1994).

■ Therefore, debts arising from express trusts, i.e., those that are formally declared or implied from the conduct of the parties, may be found nondischargeable. *Turner,* 134 B.R. at 650. *See also Matter of Bennett,* 970 F.2d 138, 142–43 (5th Cir.1992). Express trusts are generally defined as containing three elements: (1) sufficient words to create a trust, (2) a clearly defined res, and (3) intent to create a trust relationship. *In re Chavez,* 140 B.R. 413, 423 (Bankr. W.D.Tex.1992).

■ Statutorily created trust/fiduciary relationships have generally been accepted as satisfying the Code requirements. *Angelle,* 610 F.2d at 1340 ("[u]nder certain statutes, it is entirely fair to charge contractors with intent to create a trust simply because they have entered into a contract governed by a statute"). *See also Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980). *But see,*

---

5. *See also* the following definition of trust as contained in *Restatement of Trusts 2d* § 2 (1959): A trust ... is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equita-

ble duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.

*Matter of Marchiando,* 13 F.3d 1111, 1116 (7th Cir.1994) (rejected the contention that the Illinois statute which imposed fiduciary duties upon lottery ticket agents focused on the nature of the relationship between the contracting parties and the actual creation of the alleged trust res). However, the state statute must impose a trust on funds prior to the act of creating the debt as well as specify particular fiduciary duties. *In re Johnson,* 691 F.2d 249, 253 (6th Cir.1982).

In the insurance context, a fiduciary relationship has been widely found where state laws create trust-like obligations. *Quaif,* 4 F.3d at 953–954 (fiduciary relationship found where Georgia law required that insurance proceeds collected by agent may not be commingled with personal funds and that they must be promptly reported and remitted to the insurer). *See also* 3 *Norton Bankruptcy and Law Practice 2d* § 47:23 (1994) and the cases cited therein.

In Puerto Rico, fiduciary obligations arise when insurance premiums are collected by insurance agents. Specifically, the law provides:

(2) All funds representing premiums or returned premiums received by an agent, general agent, manager, broker, or solicitor shall be so received in a fiduciary capacity, shall not be intermingled with other funds of the licensee, and shall be accounted for and paid in full to the person entitled thereto, within fifteen (15) days from the date in which requested, except that in case of the existence of different term in the contract between the parties, the latter shall prevail, but in no case shall it exceed the term of (90) days; Provided, That when the person entitled thereto has not requested the return of the funds, these shall be remitted within 90 days reckoning from the effectiveness of the policy, endorsement or cancellation thereof.

(3) Any agent, general agent, broker or solicitor who, not being lawfully authorized therefor, unduly takes or appropriates such funds or any portion thereof to his own use, and the managing partner, director, official or executive employee, if any of them is a juridical person, who approves or collaborates in said undue tak-

ing or appropriation, shall in addition to the other penalties provided by this title, be guilty of breach of trust, and shall be punished as provided in the Penal Code of Puerto Rico.

26 L.P.R.A. § 938 (1974). According to the statute, insurance premiums collected by the general agent form a trust and specific fiduciary duties are required in relation thereto.

■ An examination of the contract between the parties indicates that all statutory requirements are met to support a finding that a fiduciary relationship exists between the parties. The final General Agency Agreement was signed by the parties on January 2, 1991. *See* Motion Pursuant to Local Rule 108.1, docket No. 14, exhibit B1:1. Paragraph No. 6 in the aforesaid agreement requires the following: (1) the general agent is responsible for the collection and full payment of all premiums on policies written by it; (2) the premiums collected by the general agent "shall be held in a fiduciary capacity as trustee for the Company"; (3) the general agent was required to establish a separate account for the premiums; (4) the general agent is prohibited from commingling the premiums with personal or general funds of the agency; and (5) the general agent was to render payment for all premiums collected within sixty days of the submission of the "Account Current" due within ten days after the close of the preceding month. *See* Motion Pursuant to Local Rule 108.1, docket No. 14, exhibit B1:1 ¶ 6. There is no doubt that the contract between the insurer and the general agent contains the necessary statutory requirements to establish a fiduciary relationship between debtors and Insular.

■ Moreover, the facts clearly support the creation of an express trust. The contract terms contain sufficient words showing the intent of the parties to create a trust relationship. Specific fiduciary obligations are set forth concerning the handling of insurance premiums collected by debtors in their capacity as Insular's agents. Also, insurance premiums constitute a clearly defined trust res. *In re Dexter Buick–GMC Truck Co.,* 2 B.R. 247, 249 (Bankr.D.R.I. 1980).

Finally, the plaintiff must show that a defalcation resulted from debtors' conduct while acting in their fiduciary capacity. Defalcation is broadly defined as "willful neglect of duty" not requiring intentional conduct. *Matter of Moreno,* 892 F.2d 417, 421 (5th Cir.1990). Even the slightest misconduct, negligence or ignorance on behalf of the debtor constitutes defalcation. *Brown,* 131 B.R. at 904. To satisfy this element, the plaintiff merely needs to show that an innocent default of money occurred, *In re Barwick,* 24 B.R. 703, 706 (Bankr.E.D.Va.1982). Simple failure to produce funds is sufficient; debtor's conduct need not rise to the level of fraud, embezzlement or misappropriation. *Quaif,* 4 F.3d at 955. A showing of intentional wrongdoing or bad faith is not necessary. *In re Gagliano,* 44 B.R. 259, 262 (Bkrtcy.N.D.Ill.1984).

Given the undisputed facts of this case and the broad definition of defalcation, this element is easily established. The debtors committed defalcation when, contrary to the their fiduciary obligations, they failed to timely remit the insurance premiums to Insular. *Gagliano,* 44 B.R. at 262 (failure of agent to pay the amount due in premiums collected by him pursuant to fiduciary obligations is sufficient to find defalcation).

Accordingly, Insular has met its burden by establishing that debtors were fiduciaries and, while acting in that capacity, defalcation occurred. We now review plaintiffs' argument that the fiduciary relationship was waived by the parties' subsequent contracts.

Debtors counter plaintiff's claims and base its motion for summary judgment on allegations that the subsequent contracts signed by the parties constituted waiver of any fiduciary obligations established by the General Agency Agreement. Defendants' statement of the law is inadequate in that it fails to provide the correct legal standard upon which to consider their claims. While defendants listed elements necessary to substantiate a claim for the nondischarge of a debt due to misrepresentation and perhaps fraud, these elements have little to do with a claim grounded on defalcation while acting in a fiduciary capacity.[6]

Furthermore, defendants neglected to discuss the facts in relation to the theory propounded causing the court to respond to unarticulated theories. Defendants merely limited their brief to the listing and possible interpretation of certain paragraphs contained in the contract between the parties. In fact, the defendants first identify the specific acts upon which their allegations of waiver are based in their conclusion. The acts listed are as follows: plaintiff's acceptance of late payment; institution of new contracts substituting third parties; "doubtful" due date; and discretionary payment terms.

Statutory trusts and fiduciary obligations arising therefrom may be waived by the parties to that relationship. The waiver may be done verbally or by the parties' course of conduct which is contrary to or inconsistent with the fiduciary relationship. *See* 3 *Norton Bankruptcy and Law Practice 2d* §§ 47:23, 47:24 (1994) and *Restatement of Trusts 2d* § 216(1) (1959). In addition, waiver must be supported by evidence showing that the beneficiary of the trust had actual knowledge of and, in effect, acquiesced to the trustee's conduct which was contrary to the terms of the contract and the statutory fiduciary obligations. *Matter of Murphy,* 9 B.R. 167, 175 (Bankr.E.D.Va.1981).

Few publications consider the issue of waiver in relation to fiduciary obligations arising from collection of insurance premiums by agents. However, a single case has held that where the course of conduct between the parties regarding the payment of the premiums is contrary to the agent agreement, the trust-trustee relationship is changed to one of debtor-creditor. *See, e.g., Twin City Fire Insurance Co. v. Green,* 176 F.2d 532, 535–36 (8th Cir.1949) (benefits and rights derived from fiduciary relationship created between insurer and agent imposed by statute is waived where the course of conduct between the parties shows that insurer "financed" agent's business through the use of premiums rather than requiring segregation of funds as articulated in the statute).

6. The single case cited by defendants is *Sweet v. Ritter,* 263 F.Supp. 540 (D.Va.1967).

■ Debtors allege that the execution of new contracts which include a second agent as a fiduciary signifies plaintiff's intention to waive its rights under the fiduciary relationship as to the debt accumulated under the previously executed General Agency Agreement for the unpaid insurance premiums. To support this contention, debtors highlight several clauses in the new contracts. Specifically, debtors focus on the use of particular words such as "incumplió" (not in compliance),[7] "cesa" (cease) and "suspendido" (suspended) [8] "demonstrat[ing] that the unequivocable (sic) intention of plaintiff was to eliminate on the 7 of November 1991 the fiduciary relations that may have existed between plaintiff and codefendant." *See* Debtors' Motion ..., docket No. 9, p. 2.

Plaintiff explains that the new contracts were executed for the sole purpose of instituting a new method of payment due to the debtors' history of failing to remit insurance premiums to Insular. Accordingly, the second agent collected and submitted the premiums from debtors' clients as well as remit one-half of the debtors' earned commission as pay-off for those past due premiums with the remaining commission fee paid to debtors in exchange for five percent of the commissions.

Clearly, with the introduction of the new contracts, the relationship between the parties had changed, i.e., del Valle's status as a general agent was suspended. While this is admitted, plaintiff further asserts that any debt arising from the fiduciary obligations pursuant to the prior general agency agreement is affirmed under the terms of the new contract. The new contracts explicitly reiterate the continuation of debtors' financial

responsibility for debts established under the terms of the previous contract as a fiduciary in addition to payment for any new business generated.[9] *See* Plaintiff's Memorandum ..., docket No. 13, p. 13.

Furthermore, the nature of the relationship under the new contracts is of no consequence in the determination of debtors' liability for the unpaid insurance premiums. As discussed above, there is no doubt that the money owed to Insular for unpaid insurance premiums accrued under the terms of the General Agency Agreement wherein the debtors were acting in a fiduciary capacity. The broad changes in the relationship established under the new contracts, i.e., del Valle retained authorization to solicit and place business for insurance provided by Insular with the proviso that this be done exclusively through a second agent therein identified rather than directly through Insular, and whether debtors can be considered fiduciaries under the new contracts have no relevance to the determination of debtors' liability for the debt incurred as a result of their breach of trust and defalcation while acting as fiduciaries.

In light of the finding that the debt incurred as a result of a fiduciary relationship and the affirmation of the financial responsibilities for the debt in the subsequent contracts, other changes present in the new contracts are inconsequential to the resolution of this dispute. Therefore, the inclusion of a second agent for the limited purpose of expediting payments and defraying abuses; the inclusion of a promissory note bearing interest and legal expenses in the event of default; and, the change in the second agent

---

7. Debtors highlight the following quote:

Seguros del Valle, Inc. por razones ajenas a Corporación Insular de Seguros, *incumplió* su contrato de Agencia General acumulando una dueda que al presente asciende a ___.
Seguros del Valle, Inc. for reasons unknown to Corporación Insular de Seguros, did not comply with the general agency contract accumulating a debt which at the present amounts to ___. (translation provided).

8. These words are contained in the following excerpt:

Seguros del Valle, Inc. *cesa* como Agente General de Corporación Insular. No obstante, su

responsabilidad económica subsiste tal y como se ha reconocido en las cláusulas anteriores de este contrato. Esto significa que el contrato de Agencia General queda *suspendido*.
Seguros del Valle, ceases as general agent for Corporación Insular. However, its economic responsibility subsists as recognized by previous clauses contained in this contract. That means that the general agency contract is hereby suspended. (translation provided by plaintiff).

9. Plaintiff enters into an analysis based on the principles of contract law. Given the findings of the court, it is not necessary to address this argument.

with the third contract does nothing to change the status of the debt.

■ This same reasoning defeats debtors' argument that plaintiff allegedly intended to waive the debtors' fiduciary obligations and any protections and benefits arising therefrom because the new contracts did not include a firm repayment plan for the unpaid insurance premiums. Under the terms of the new contracts, payments were to be made periodically as funds were available. In addition, the repayment schedule was subject to annual review every November until the debt was paid in full.

Contrary to debtors' conclusions, these facts do not support plaintiff's alleged repudiation of debtors' liability arising from the fiduciary relationship. In fact, the execution of new contracts not only fail to support any such intention, it clearly shows that Insular did not acquiesce to debtors' performance under the general agent agreement.[10] Rather, through the new contracts, plaintiff instituted an alternative arrangement to assist debtors in rectifying their failure to adhere to their lawful obligations under the General Agency Agreement and by preventing continued failure to complete such duties in relation to future premiums collected. The fact that the terms of payment were modified primarily due to the actions of the debtors as trustees does not release debtors from the trust obligations arising from the prior general agency contract.

■ Finally, debtors allege that the plaintiff waived its rights and benefits established under the fiduciary relationship because late payment was accepted. Late payment alone has been found insufficient to establish waiver. *In re Baird,* 114 B.R. 198, 205 (9th Cir. BAP 1990). However, in the event that late payment was found to be sufficient, debtors failed to present any factual support or make any allegations regarding the requirement that plaintiff knew and actually acquiesced to the late payment through the continued conduct of accepting these payments without taking any appropriate steps to remedy the situation.[11] In direct contradiction to debtors' argument, the facts before the court establish that the plaintiff took remedial steps to end delinquent payment; an action that is inconsistent with debtors' conclusion that plaintiff's actions waived its right to enforce any rights under the fiduciary relationship.

Accordingly, the arguments presented by debtors are not dispositive on the issue of whether the rights and benefits derived from the fiduciary relationship established by the general agent agreement were waived by the plaintiff to sustain their conclusion that the debt for unpaid insurance premiums should be discharged. Debtors have failed to present sufficient evidence to sustain their burden in support of their motion, therefore, their motion for summary judgment must be denied.

## IV. CONCLUSION

In view of the findings above, the Motion for Summary Judgment submitted by defendants Jorge del Valle and Diana Ferrer Marrero is hereby denied. In addition, the Motion for Summary Judgment submitted by the Commissioner of Insurance of Puerto Rico as liquidator and of Corporación Insular de Seguros is hereby granted.

Accordingly, the amount of unpaid insurance premiums, to be determined by an audit at a later date, owed to Corporación Insular de Seguros by its agents Jorge del Valle and Diana Ferrer Marrero constitutes a nondischargeable debt under 11 U.S.C. § 523(a)(4).

The Clerk of the Bankruptcy Court shall enter judgment.

SO ORDERED.

---

10. We only focus on acts which occur as a result of the new contracts; no evidence or argument was presented concerning the course of conduct of the parties prior to the issuance of the new contracts.

11. While it is plausible that the course of conduct under the general agency agreement could have indicated waiver by Insular, debtors' neither argue nor present evidence to that effect. Dispositive to this determination would be facts showing that late payments were made and accepted for a considerable amount of time as well as communications between the parties indicating possible acquiescence of debtors' violations of its fiduciary duties.